There are two issues in play on this appeal, but they are not as different from each other as they might at first glance seem. The first issue is whether the district court abused its discretion in holding a second evidentiary hearing in this matter. And just as an aside, I am forced to concede, especially given this court's recent precedent in Acuna, Hernandez Acuna, that if the district court decided in its discretion to hold an evidentiary hearing or to do a de novo review of the magistrate's decision on a credibility determination, which was in play here, the district court was obligated to have an evidentiary hearing. So the question backtracks to the issue of whether or not the district court should have allowed new evidence at all. And we would, we contend that that was an abuse of discretion, and our basis for that primarily here is the government came to the first evidentiary hearing not prepared to perform. They put on a perfunctory case, they believed, and the government says that they didn't engage in gamesmanship here, and I would agree with that. What they engaged in was hubris. The issue was what? Hubris, pride. The government did not believe. False sense of pride. Hubris is a false sense of pride. And it did prove to be false because the magistrate court ruled against them. The hubris, the source of the hubris here was that, and they knew based on the pleadings in this matter, that it was going to be a credibility determination between the defendant and the agents whether or not the defendant invoked his right to counsel. That was the central issue that was in play, the factual dispute in play at the evidentiary hearing. The government, although they had five witnesses at their disposal, brought one witness, did a pretty perfunctory directive to the witness, and just believed that there's no way that the magistrate court is going to believe the defendant over an agent. I don't think it's just quite that simple. The real crucial issue was whether or not your client could read the affidavit. Your client contended that he was handcuffed with his hands in the back. And that was not covered properly, apparently, because in the hearing before the district judge, there was another agent who said, yes, he was handcuffed in the back, but then the case agent said, I want him released while I'm questioning him, and the only thing I would do is handcuff him. And so that was a big matter of credibility. Isn't that so? Your Honor, what you're saying is true to a degree. The government and the district court puts a heavy focus on the issue of whether the handcuffs were in the front or the back, but I will note that if you read the magistrate's report and recommendation, a fair reading of that report and recommendation is that that issue was one factor in the credibility determination. The magistrate court found a variety of reasons why Mr. Kirshen's testimony was more credible. Let me skip over one thing. You're saying it was an abuse of discretion to have another hearing, but I don't think you'll find a case that really supports that. At the further hearing, you would have had a chance to put on other witnesses, too. Isn't that correct? Yes, Your Honor. Well, when I was going through the record at the record, excerpt from the record at 51 and 52, I noticed that there was a woman who was there when your client alleged that he asked for an attorney on the first instance. And he said, as I remember, there was a female there. I'm looking in her eyes as I was saying that, and she's looking at me and she says something to the effect I'm not needed here anymore, there's nothing else I could do, and then I'm going to leave. And after she left, the question started. Now, was that woman an assistant U.S. attorney? It was, Your Honor. Well, it turns out at the second hearing we learned conclusively it was the U.S. attorney and not only a U.S. attorney, assistant U.S. attorney, but the very one who was presenting evidence at that hearing. Well, I can't understand why somebody, she would have been a very important witness somewhere. You didn't call her and the government didn't call her, and I'm questioning it because it's the one witness that I would tend to believe if I were the hearing officer, if I were in the district court. It's an interesting question, Your Honor, and I do not know why we did not call her as a witness, but I imagine, I speculate that there would be procedural hurdles in place to calling a prosecutor as a witness that perhaps the defense wanted to avoid. Now, why the government didn't call her as a witness. You didn't handle the case. I did not. I did not. I would concede, although I always feel this trepidation when I say that, but I would concede that the question of whether or not to hold a second hearing is not our strongest issue. In fact, the law puts that decision pretty squarely in the district court's hands. It's pretty hard to reverse the district court's decision to hold a hearing. In fact, I think you've argued to us many times and complained that the district court didn't hold a hearing in other cases. True enough. I wouldn't go too far down that road. I agree. I agree, Your Honor. So why don't you turn to the 615 issue? And as I began my presentation with this observation that the issues converge, and why do I say that? The first, there are policy issues afoot in this appeal. The first is should the district court, in exercising its discretion, take into account this danger of 615 violations? And I will note, you know, I'm not up here saying that these agents all got together and lied and came together with a story to convict Mr. Kershman. But what I do know, based upon what I know of the science of memory, is that memories can be changed and altered in a manner that is below the conscience of the witness. That these witnesses, by getting together and discussing this matter, they may have came to believe that Leslie Kershman's hands were handcuffed in front of him, based on the discussion, when in fact that is not what the real memory is. And this all gets into, and I don't want to bore you with the science of memory, but memories are not data that's stored in your brain. Every time you remember something, you re-remember it. You go down that path again. And that's the reason why we have the rule of exclusion. One question. I know you don't make a point, but I understand there was a photograph taken while he was being interrogated. And it's not mentioned, but I take it, and reading the record I know about it, but I take it that the photograph does not demonstrate whether he was handcuffed in front or back. Am I right? The photograph, and I should have put it in the record and I apologize for not doing it, but the photograph seemed to show the client, although not definitively, with the handcuffs behind his back. But the timing of the photograph, when it was taken and when it wasn't, in my mind, was not conclusive because the undisputed testimony was that there was a period of time where he was handcuffed. You answered it. Okay. Sorry. Assuming that there was a 615 violation here, then we get to the question of remedy. Why do you think the district court's choice was, why do you think the district court was obligated to exclude the witnesses? Is that essentially your argument, if there is a 615 violation? There is certainly a 615 violation here, although I admit that the law is unclear about whether the rule of exclusion would last between the two hearings. Right. But assuming that it does. Assuming that there is. First of all, the law that says that exclusion of the witnesses is not the preferred remedy applies when the witnesses are defense witnesses. This Court's case law points out that there's a difference, that the defense has a constitutional right to put on a defense. When the witnesses are excluded, that infringes that constitutional right. The government does not enjoy that same constitutional right. So the doctrine of that being the unpreferred remedy doesn't apply here. The second thing I would point out is that the case law puts the burden of proof on the party that violated the rule for good reason. Case law recognizes that it's very difficult to prove a negative. It's very difficult to prove that these four additional witnesses that the government put on the stand, that their memories were altered, that their memories were tainted, contaminated by the violations of the rule of exclusion. It's almost impossible to prove that. So what do you want us to do? I mean, let's assume that we conclude the district court didn't abuse its discretion, the 615 applies to subsequent hearings. Where does that leave us here from your perspective? That's a good question. The preferred remedy for us would be that the witnesses' testimony be excluded. It's impossible to tell whether or not the credibility was of the witnesses, whether their subjective belief, recall of memory is accurate, recall of what happened 10 months ago. Is that what really happened? We will never know that in this case because their memories were tainted and perhaps confabulated and rewritten by the violation of the rule of exclusion. Because there's no way of knowing that. You know, all these witnesses said was I didn't hear it. They didn't categorically say it was never made. And we know from the record these witnesses were searching the place, contacting other people. It was kind of a wild melee there for a while. So I don't know that you've got that strong a case on 615 of a pretended violation, if there was one. The 615 violation here, is that what really happened? They sat on the stand and said I remember it that way. But do they remember it that way because their memories were tainted and influenced by the 615 violation? And that is a question we will never know the answer to. And I'd like to reserve my remaining eight seconds for rebuttal. Thank you. May it please the Court. Robert Elman for the United States. Your Honor, I don't think there's any disagreement that the abusive discretion standard applies to whether a witness can be called to testify, even if there is a rule 615 violation. And which, incidentally, is a point the government does not want to make. I'll be happy to address if you like, but the fact is there were four sound reasons for exercising its discretion in the manner that the district court did in this case in permitting those four agents to testify. The first is that the motion to suppress does not refer to the handcuffs being behind the back. And that was an issue injected during the hearing before the magistrate to the government's surprise. And I refer you to pages 58 and 62 of the excerpts of record. There was no indication that there would be any such testimony before that time. So that was a surprise. Yes, it was, Your Honor. I can understand that. It created a credibility issue. And that issue was something that the magistrate relied upon heavily in making its ruling. You know, one thing, you know, I asked a question about the assistant U.S. attorney who was there at the time. I am difficultly understanding why she wasn't called as a witness at the second hearing. Well, I don't know why either, Your Honor. She was there. And here's a credibility matter. And I know a court would, there may have been reasons that DEA, you know, this is a big case. They have $2.5 million sitting out there that the government wanted to seize. And they wanted to find out about it, obviously. I can assume with the magistrate that maybe there was a credibility issue. But I would also say that if I were a district judge and there had been an assistant U.S. attorney, I would believe whatever that assistant U.S. attorney would say if there was a credibility issue. And I know it's not an issue here, but I wanted to ask about it anyway. If you know anything. If you don't, you can't answer it. Well, I don't. But it does appear to me that that AUSA left before the point where the handcuffs would have been moved. And that was the critical issue at the second hearing. So I'm not sure she could have added anything to it, even if she had testified. Well, the question was, he said that he talked about getting a lawyer before she left. And if that was false, that would have been a big issue in credibility. I don't understand why, Your Honor. That's all right. I know we brought five witnesses. Just a curious appellate judge. Well, understood. This new credibility issue weighed heavily in the magistrate's decision. And I refer you to the excerpts of record at pages 79 and 80 where the magistrate emphasizes the fact that Mr. Kershenman testified that he was handcuffed behind his back. It weighed heavily in that decision. So that's the first rationale for permitting these witnesses to testify. The second is that the government offered additional evidence. It proffered declarations along with its objections and its rationale for why those witnesses should be brought forward to testify. The third reason is that the court did express its rationale for holding this hearing. The judge said, and I quote, I want to make my, quote, independent credibility judgment, end quote. The court also noted, and I think this is perhaps the best reason for holding the second hearing, excuse me, for permitting those witnesses to testify, that Agent Kasulo, the only government witness at the magistrate hearing, did not testify on whether the handcuffs were in front or in back of that witness. So the whole notion that these agents could have got together and tailored their testimony makes no sense. There's no story that these people can be sticking to because there's no testimony by the government witness on this point. He's only asked once on direct examination whether the witness was handcuffed. And that's it. And, of course, he says he was. Now, the agents get together, the accusation apparently is that the agents get together. But what I'm hearing today is they shouldn't have been allowed to testify because their memory is malleable. Well, that's typical cross-examination fodder. If there's some reason to think that the witness has a memory problem, you develop that on cross-examination. And, of course, there was a full and fair opportunity to do that, and defense counsel did cross-examine these witnesses and did delve into the opportunity for them to talk with one another in between the hearings, which was another point that was argued. The district judge clearly articulated why it rejected the magistrate judge's credibility finding here in reversing. It would also have been manifestly unjust not to hold that second hearing because the district judge found that Mr. Kirshenman had perjured himself at the magistrate's hearing and, again, at the district court hearing. So it certainly would have defeated justice to let the magistrate ruling stand without bringing in and considering that additional evidence which was brought forward before the district judge. There's no evidence of collusion in this case. There's no evidence that these agents got together to testify. There's nothing nefarious going on here. Certainly the AUSA has an obligation to determine what these other witnesses saw. I still don't understand why when the Miranda issue arose, why all of those agents weren't called before the magistrate. Your opponent says it's part of sometimes a government strategy to put on a bare case and wait for the defense to show its hand and then be prepared and then ask for the district court to review. I don't know how often that occurs, but maybe you'd like to comment on it. I would, Your Honor. The way that it was phrased in the opening brief is that the government saved its knockout punch for the second hearing, and I think that's the argument here today. And I would submit that there's absolutely no reason and no incentive for the government to do that. Why would the government withhold evidence it thought it needed and risk the possibility that the district court wouldn't even grant a second hearing? Well, here, you know, in the magistrate, it was one-on-one. He said and she said. That's not a very overwhelming case for the government. It's not, but again, Your Honor, the government was surprised by the testimony that the defendant injected, which, again, the district court found to have been false testimony. That is not something the government expected. Well, that's a question. Why don't you think that 615 should apply to a subsequent hearing? Well, those four agents who testified at the second hearing were not present at the first hearing, and what the rule excludes, I've got it here. At the request of a party, the court shall order witnesses excluded so they can't hear the testimony of other witnesses. These agents weren't even at the first hearing, and in fact, the court did invoke the exclusion rule both times and enforced it. So certainly you don't have a 615 violation. It does apply at these hearings, but it was invoked. The court enforced it. There's no violation on its face. I guess I misunderstood your statement. Your argument is not that 615 doesn't apply to a subsequent hearing. It's just that it doesn't apply in this case under the facts. Is that it? Correct. And as I say, the four witnesses didn't testify at the first hearing, and they were excluded at the second. And I refer you to note six at page 25 of our answering brief. I want to ask another question. You know, there's been a lot of litigation in this case. Actually, the magistrate judge would say that the agent lied. And the district judge said the defendant lied. And one thing that bothers me, when the agent said he wanted to have the defendant relaxed when he talked to him, it would have been the easiest thing to get a waiver of the Miranda rights. And that is part of the procedure that's usually followed. And I'm critical that the agent did not ask for a waiver. Is there anything you can say on that? I'm sorry, Your Honor, I can't shed any light on that. It bothers me because it would have avoided all of this controversy. I don't know who was lying. I know what the record says. But I don't honestly know who was lying. There was a lot of money involved in this case. I wanted to mention that to you because I think these agents should get a waiver if they possibly at least try to get one. I understand, Your Honor, and your point is well taken. I would observe, though, that those waivers are frequently attacked as having been induced involuntarily. Well, I don't know. I haven't been familiar with that. Unless the Court has any questions. Thank you, Your Honor. I don't know if the government is seriously trying to contend that if agents discuss testimony with each other during a hearing by doing it outside in the halls, that that's not a 615 violation. Clearly the law is contrary to that. The rule 615 has its roots in biblical history. They knew back then instinctively what we know now by neuroscience, which is that memories are malleable. Memories change, and they change each time they're discussed, and they can be altered by witnesses discussing their testimony with each other, by reading transcripts, by reading the report recommendations which summarize the testimony. That happened in this case. These agents' memories may have been altered, and we will never know the truth because of the violation of the Federal Rule of Evidence 615. And the government had a responsibility to prevent it from happening, and they did not do it. So the pain and the burden of that violation falls squarely on their shoulders. Thank you. Thank you, counsel. The case is here to be submitted.
judges: Farris, Thomas, Bright